# IN THE COURT OF APPEALS OF IOWA

No. 15-0246
Filed June 29, 2016

**JOSEPH MICHAEL STEPHEN,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

Joseph Michael Stephen appeals the district court's dismissal of his application for postconviction relief. **AFFIRMED.**

Karmen R. Anderson of the Law Office of Karmen Anderson, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney General, for appellee State.

Considered by Doyle, P.J., Mullins, J., and Eisenhauer, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**EISENHAUER, Senior Judge.**

Joseph Michael Stephen appeals the court's dismissal of his application for postconviction relief. We affirm.

## I.    Facts and Prior Proceedings

Shortly after 1:00 a.m. on April 13, 2009, Officer Paul Parizek observed a pickup truck with an equipment violation and activated his emergency lights. As driver Michael Scopa started to pullover, Parizek observed passenger Joseph Stephen "moving around, kind of shifting from side to side in his seat." Because the stop occurred in a remote, dark area, Parizek approached the truck on the passenger side and observed Stephen making furtive movements. Specifically,

> [Stephen] was turned not completely facing the driver, but he had a good portion of his back to where I was standing and both his hands, and he was messing down around, like, where the seat belt would buckle. Like he was stuffing something into the seats. So they didn't know I was there. I stood there for a second and waited for [Stephen] to finish whatever he was doing and make sure he came up with empty hands. When he did, I knocked on the door . . . . They turned around and looked at me. I got identification from both of them.

Officer Parizek took the identification back to his car, ran a computer check, and called for backup. Parizek talked to Scopa outside the truck and explained his rear license plate was not illuminated. Parizek asked Scopa, "Do you know what Stephen was doing when he was messing around there?" Scopa replied he did not. Parizek then asked if Scopa thought Stephen may have been hiding a weapon, and Scopa replied he did not think so. Scopa gave Parizek permission to search the truck, and once the other officer arrived, Parizek again approached the truck and asked Stephen to get out. At trial, Parizek testified:

And as we were standing next to the truck, I asked [Stephen] if I could pat him down. He said, "That's fine." I said, "Do you have any weapons on you?" He said, "Yeah, I have a knife." At that time I . . . started patting him down, and the knife I found was . . . a small pocket knife. I went ahead and I stuck that in my pocket just to hold on to it until we were done, and then I continued on patting him down.

As I was patting him down, in his left front pants pocket, I could feel that there was a plastic Baggie in there. It is a pretty distinct shape and texture. You can feel the jeans sliding across it. I asked him what [it was, and Stephen] said he didn't know. So I stuck my hands into his pocket, pulled it out, and it was just a clear plastic Baggie that contained what looked to me to be methamphetamine. So at that time I went ahead and arrested Mr. Stephen.

Rachael Seymour was appointed counsel for Stephen. In May 2009, Stephen and Scopa were charged as codefendants in a four-count trial information—count I, conspiracy to manufacture methamphetamine (excess of five grams); count II, possession of lithium with intent to manufacture methamphetamine; count III, possession of anhydrous ammonia with intent to manufacture methamphetamine; and count IV, possession of methamphetamine. Stephen's trial was set for July 2009. However, on July 1, 2009, the county attorney filed a notice of intent to not prosecute and sought dismissal on the basis the federal government was pursuing the same criminal charges against Stephen. The court granted the State's motion and dismissed the case without prejudice.

The federal action did not proceed to trial. At the end of July 2009, the State refiled its trial information, charging Stephen with the same offenses but also charging an habitual-offender enhancement. The court set Stephen's trial for October 21, 2009. Defense counsel Seymour filed a request for production of documents, and she planned to depose the State's witnesses on October 5,

2009. However, on October 5, Seymour made an oral motion to the court to withdraw as Stephen's counsel, citing an ethical conflict. Stephen was present, and he suggested the court appoint Kent Balduchi as someone familiar with his case from discussions of another matter. The court granted the motion to withdraw and appointed Balduchi. Due to Seymour's withdrawal, the depositions were not taken.

Stephen and his new counsel appeared at an October 9, 2009 status conference. On October 13, Stephen filed a motion in limine to exclude items, including the lab report and references to anhydrous ammonia and lithium. The court held a motion hearing on October 14, 2009. On October 19, 2009, the State filed its witness and exhibit list.

Immediately prior to the October 21 trial, Stephen told the court he had elected to proceed to trial without his counsel taking depositions rather than waive his right to a speedy trial. Stephen's defense theory was he was working with the seat belt and had no knowledge of the Baggies stuffed in the seat or the other items in the truck. After the State rested its case, the defense rested without presenting evidence. On count I, the jury found Stephen guilty of a lesser-included offense, conspiracy to manufacture a smaller amount of methamphetamine, five grams or less. The jury found Stephen guilty as charged on count II, possession of lithium with intent to manufacture methamphetamine, and count IV, possession of methamphetamine. The jury acquitted Stephen on count III, possession of anhydrous ammonia with intent to manufacture. The district court entered judgment and sentence, Stephen appealed, and this court

affirmed. *See State v. Stephen*, No. 10-0286, 2011 WL 5393453, at *1 (Iowa Ct. App. Nov. 9, 2011).

Stephen filed an application for postconviction relief (PCR), and the PCR court took testimony over two days.[1] The court denied relief in a comprehensive ruling on November 26, 2014. Stephen now appeals.

## II. Ineffective Assistance of Counsel

Stephen contends both of his attorneys were ineffective.

**A. Scope and Standards of Review.** To prove ineffective assistance of counsel, Stephen must establish counsel failed to perform an essential duty and this failure resulted in prejudice. *See State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015). We review de novo. *Everett v. State*, 789 N.W.2d 151, 158 (Iowa 2010).

"In determining whether an attorney failed in performance of an essential duty, we avoid second-guessing reasonable trial strategy." *Id.*; *see State v. Ondayog*, 722 N.W.2d 778, 785 (Iowa 2006) ("We presume performance of counsel falls within a range of reasonable professional assistance."). In order to show prejudice, a defendant must show that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Madsen*, 813 N.W.2d 714, 727 (Iowa 2012). Counsel is not ineffective for failing to make a meritless claim. *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011).

**B. Ineffective Assistance of Attorney Seymour.** Stephen first claims attorney Seymour rendered ineffective assistance. As the PCR court correctly ruled, Stephen's challenge to Seymour's effectiveness was decided by this court

---

[1] Seymour testified she did not feel she would be able to zealously represent Stephen because he had twice threatened to kill the prosecutor. She considered Stephen's threats to be serious.

on direct review. *See Stephen*, 2011 WL 5393453, at *9 (ruling Stephen cannot establish prejudice because Seymour was granted permission to withdraw and pretrial matters "could have been conducted by subsequently appointed counsel"). Stephen cannot relitigate issues decided adversely to him on direct appeal. *See Holmes v. State*, 775 N.W.2d 733, 735 (Iowa Ct. App. 2009); *see also Wycoff v. State*, 382 N.W.2d 462, 465 (Iowa 1986) ("Issues . . . adjudicated on direct appeal cannot be relitigated in a postconviction proceeding.").

**C.  Ineffective Assistance of Attorney Balduchi.**  Stephen's PCR application asserted Balduchi was ineffective in the same manner as attorney Seymour and, additionally, was ineffective in failing to assert a *Brady* challenge. We will address his claims in turn.

*1. Failing to File a Motion to Suppress.*  Stephen asserts Balduchi should have filed a motion to suppress evidence of the drugs found in his pocket during Officer Parizek's patdown search for weapons. Stephen contends a court would have suppressed the drugs as the search violated the "plain feel" exception to the warrant requirement. *See Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993).

At the PCR hearing, Balduchi testified that if he had had more time, he would have filed a motion to suppress. He also testified Stephen chose not to delay trial by waiving his right to a speedy trial. The PCR court ruled Balduchi was not ineffective because Parizek's search was constitutional and counsel had no duty to file a meritless motion.

Upon our de novo review, we conclude Parizek's search violated the "plain feel" exception. Protective searches for weapons are limited and are not meant

to discover evidence of crime. *Id.* at 373. The Supreme Court has established

the permissible scope of a patdown search for weapons:

> [A] protective search—permitted without a warrant and on the basis of reasonable suspicion less than probable cause—must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed.

*Id.* (citations omitted). The Court analyzed an officer's "tactile" discovery of a

small lump in Dickerson's jacket pocket and set forth the "plain feel" exception to

the warrant requirement:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity [as contraband] immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.
>
> . . . .
>
> [W]hether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures.
>
> . . . .
>
> Here, the officer's continued exploration of [the] pocket after having concluded [the pocket] contained no weapon was unrelated to "[t]he sole justification of the search . . . the protection of the police officer and others nearby." It therefore amounted to the sort of evidentiary search that *Terry* expressly refused to authorize, and that we have condemned in subsequent cases.

*Id.* at 375-77 (citations omitted); *see State v. Harriman*, 737 N.W.2d 318, 321

(Iowa Ct. App. 2007) (holding where "the identity of the contraband" (drugs) was

"immediately apparent" during the patdown search, the drugs were admissible).

At the PCR hearing, Officer Parizek testified he asked Stephen if Parizek

could "check" him and Stephen said, "Yes." Officer Parizek explained:

Q. And if you could just [state] why feeling a Baggie in Mr. Stephen's pocket would pose a safety risk to you as an officer? A. It doesn't.

. . . .

. . . A. I don't usually use the term "pat down" because most people don't get it . . . . I know what I was thinking at the time.

Q. Which was your intent was to pat him down for weapons? A. Yes.

Q. Okay. Now, you never asked Mr. Stephen if you could go into his pockets to retrieve that Baggie; is that correct? A. No. When I felt the Baggie, I asked him what it was. He said he didn't know.

Q. And so at that point, you went into his pocket. A. Yes.

Q. And he did not consent to that? A. No.

Q. And you did not ask him if you could reach into his pocket? A. No.

Q. And you knew at that time that the Baggie was not a weapon? A. Correct.

Because Officer Parizek did not testify it was "immediately apparent" the Baggie he felt was contraband other than a weapon, we agree with Stephen that the search of his pocket was not justified under the "plain feel" exception. *See Harriman*, 737 N.W.2d at 321.

However, our conclusion the officer overstepped the constitutional bounds does not end our analysis. Illegally obtained evidence is not "sacred and inaccessible" under the exclusionary rule. *State v. Seager*, 571 N.W.2d 204, 210 (Iowa 1997). Where the evidence "ultimately or inevitably would have been discovered" in a lawful manner, "the exclusionary rule serves no purpose and does not apply." *Id.* at 211 (discussing exceptions to the exclusionary rule). Search incident to arrest is a recognized exception to the exclusionary rule. *State v. Gaskins*, 866 N.W.2d 1, 8 (Iowa 2015) (explaining this exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations").

Because Officer Parizek inevitably would have searched Stephen incident to arresting him upon the officer's discovery of the components for a methamphetamine lab and would have obtained the Baggie of methamphetamine through the lawful means of a search incident to arrest, the exclusionary rule does not apply. *See id.*; *see also State v. Rowland*, 352 P.3d 506, 510 (Idaho Ct. App. 2015) (holding defendant "would certainly have been arrested as a result of the contraband found pursuant to the valid search warrant and then searched incident to that arrest, making the discovery of the methamphetamine in his pocket inevitable"). Accordingly, the methamphetamine in Stephen's pocket would not have been suppressed had Balduchi filed a motion to suppress, and Balduchi had no duty to make a meritless motion. *See Brubaker*, 805 N.W.2d at 171.

*2. Failing to File a Motion to Dismiss—Speedy Trial.* Stephen asserts Balduchi was ineffective in failing to challenge "the dismissal the State obtained; especially in light of the fact [Stephen] was not prosecuted by the federal government." Stephen also contends Balduchi should have filed a motion to dismiss "once the new charges were filed and the speedy trial dates had passed."

The State is free to refile a criminal charge that it dismissed in the furtherance of justice. *State v. Abrahamson*, 746 N.W.2d 270, 273 (Iowa 2008). For such a dismissal to be valid, the State must provide appropriate and sufficient reasons for the dismissal. *Id.* For Stephen's proposed motion to dismiss to be successful, he would have to show "the prior dismissal, regardless of its stated purpose, was without adequate cause and that it impacted

unfavorably upon [Stephen's] speedy trial rights." *See id.* (citation omitted). After our de novo review of the record, we agree with the PCR court:

> While the notice and order could have probably provided more detail, there is sufficient information to show that the case was dismissed for grounds unrelated to [Stephen's] speedy trial rights. The prosecutor stated that the case was dismissed due to the federal prosecution in the notice, and he testified to such at [the PCR trial]. No evidence was presented to challenge his testimony or the information in the notice he filed with the court. There is no indication that the State was not ready to proceed with trial in July if it had not voluntarily dismissed the case.
>
> . . . .
>
> In this case, the evidence shows that the State dismissed the case because it thought the federal government would take on the prosecution.

We conclude Balduchi was not ineffective in failing to file a meritless motion to dismiss alleging a violation of Stephen's speedy trial rights. *See Brubaker*, 805 N.W.2d at 171.

*3. Failure to Investigate.* Stephen claims competent counsel would have investigated the lights on the rear license plate, i.e., the equipment failure forming the basis for the stop. Because Stephen's PCR application did not assert counsel was ineffective in this regard, the PCR court did not rule on this issue. Stephen has failed to preserve error on this claim. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Stephen also claims competent counsel would have investigated the seat belt's coupler. Specifically, Stephen's "movements were consistent with him trying to buckle a non-functional seatbelt or at least make it appear to the officer

that it was secure" and evidence the coupler was broken "would have challenged the State's evidence."

On direct appeal, this court ruled Stephen's claim Balduchi was ineffective in failing to file a motion challenging the *stop* was without merit. *See Stephen*, 2011 WL 5393453, at *9.[2] Both as the truck slowed down and after it stopped, Officer Parizek observed Stephen making "furtive movements" in his seat area. After receiving consent from Scopa, Parizek's search of that area revealed two incriminating Baggies. The officer's search of the passenger area in which Stephen was sitting revealed a fume mask. During the 2009 trial, he testified:

> Q. Did you have occasion after Mr. Stephen and Mr. Scopa were removed from the cab of the truck to examine the seatbelt receiver? A. I saw it.
> Q. Did you realize that that seatbelt receiver was broken and inoperable? A. No.
> Q. Would the movements Mr. Stephen had at the time you approached also [have] been consistent with someone trying to trap or put the seatbelt underneath their thigh? A. I suppose it's possible.
> Q. So it's consistent as far as Mr. Stephen stuffing something down there, it could very well have been him trying to make that seatbelt stay underneath his thigh to give the appearance of having a seatbelt fastened; correct? A. It's possible.
> . . . .
> Q. When you stopped the vehicle, did Mr. Stephen have his seat belt on? A. Yes.
> Q. So he didn't have it stuffed under his leg? A. Not that I could see.
> Q. . . . Did you ask Mr. Stephen what he was doing? A. At one point I did.
> Q. Did he tell you he was trying to hook his seatbelt up? A. No.
> . . . .
> Q. . . . Mr. Scopa could have stuffed that stuff in the seat down there in that hiding place before he ever picked up Mr. Stephen; isn't that correct? A. It's possible.

---

[2] Thus, we do not address the same claim fleetingly made in Stephen's brief.

Even if the seatbelt coupler was broken, Parizek had grounds to search that area to confirm or dispel the suspicions he had regarding Stephen's movements. Based on Parizek's trial testimony and the State's additional evidence at trial, we are unable to conclude, but for Baluchi's failure to investigate the coupler, the results of the proceeding would have been different. *See Madsen*, 813 N.W.2d at 727. Thus, Stephen has failed to meet the prejudice prong of this ineffective-assistance claim.

## III. Illegal Sentence

Stephen challenges the sentences imposed by the district court. We described his sentences on direct appeal:

> At the sentencing hearing held January 29, 2010, Stephen stipulated to two prior felonies: he was convicted on September 6, 2000, of possession of lithium, and on May 13, 2003, of manufacturing a controlled substance, both . . . violations of chapter 124.
>
> [On] February 11, 2010, the court imposed sentences of incarceration not to exceed forty-five years each on Counts I and II, and a term not to exceed fifteen years on Count IV.
>
> > The sentences in Count I and II shall run concurrent to each other but shall run consecutive to his sentence in Count IV for an indeterminate term of incarceration not to exceed sixty (60) years. Additionally, these sentences shall run consecutive to his parole revocation.
>
> The court found "mitigating circumstances do not exist and the defendant shall be required to serve the mandatory minimum sentences established under Iowa Code sections 902.8, 124.411, and 124.413 prior to being eligible for parole."

*Stephen*, 2011 WL 5393453, at *5.

**A. Previously Resolved Sentencing Challenges.** Stephen first complains his sentences subject him to "double counting." Stephen cannot relitigate the "double counting" issue because this challenge was resolved on

appeal. *See Holmes*, 775 N.W.2d at 735; *Stephen*, 2011 WL 5393453, at *14-15 (stating "even if we were to apply the concept of double-counting, the legislature has intended the result" and concluding the district court "properly sentenced" Stephen "by imposing the penalty for an habitual offender under chapter 902 and then enhancing that sentence pursuant to [Iowa Code] section 124.411(1)").

Second, Stephen claims his sentence "was cruel and unusual punishment," a claim also previously resolved on direct appeal and thus not properly before us. *See Stephen*, 2011 WL 5393453, at *12 ("[T]he sentence was not grossly disproportionate to the underlying crimes as to constitute cruel and unusual punishment").

**B. Equal Protection.** Stephen challenges the constitutionality of his sentencing enhancements—mandatory minimum and habitual offender—under the Federal Equal Protection Clause. We review constitutional challenges de novo. *State v. Kern*, 831 N.W.2d 149, 164 (Iowa 2013).

"[A]ll persons need not be treated alike to meet constitutional standards of equal protection. It is enough if all members of the same Class are treated equally. Of course, the classification itself must be reasonable." *Hack v. Auger*, 228 N.W.2d 42, 43 (Iowa 1975). "The legislature is given wide discretion in defining the limits of classes when a statute involves classification of persons or things. If a classification is reasonable and operates equally upon all within the class, it is a valid classification." *State v. Hall*, 227 N.W.2d 192, 194 (Iowa 1975).

Stephen specifically claims applying "all enhancements to a single offense is reading [in] a provision that is not in the statute" and a "plain reading" of section 902.8 and section 124.411 would not lead to the conclusion both can be

applied. However, Stephen admits those statutes have been "interpreted in that manner" and, accordingly, we find no merit to this challenge. *See* Iowa Code §§ 124.411 (stating any person convicted of a "second or subsequent" offense under the controlled substances chapter "may be punished by imprisonment [not exceeding] three times the term otherwise authorized"), 902.8 (defining habitual offenders as persons "twice before" convicted of a felony).

Alternatively, Stephen claims his sentence shows "Iowa has singled out drug offenders and habitual offenders under section 902.8 to punish at a higher rate than burglars, child molesters, and even some homicides."

"Our habitual criminal law is the typical recidivist statute by which the State undertakes" to utilize "increasingly severe punishment" on offenders "who have previously failed to respond to more lenient or considerate measures." *Hack*, 228 N.W.2d at 43. The State's "harsher treatment of those who have already been unsuccessfully subjected to penitentiary commitment, as opposed to those who have not, is a logical and rational development of this state policy." *Id.* Iowa's enhanced sentences for habitual offenders "sets up a reasonable classification . . . not subject to challenge under the equal protection clause . . . . Virtually all courts [that] have considered such statutes have reached the same result." *Id.* Additionally, mandatory imprisonment for certain drug-related offenses does not violate an offender's equal protection rights because there is a rational relationship between a mandatory prison sentence and the legitimate governmental interest in deterring drug abuse and sales. *Hall*, 227 N.W.2d at 194 (recognizing the "legislature has broad police power to regulate drug traffic"). Stephen's challenge based on equal protection is without merit.

**C.  Double Jeopardy.**  Stephen asserts the district court violated the double jeopardy provision when it made the determination that [he] could be sentenced on [both possession of lithium with intent to manufacture and conspiracy to manufacture a controlled substance].  The State alleged Stephen was conspiring to manufacture methamphetamine, thus he would have been in possession of the materials to manufacture the substance, i.e. lithium.  Because [lithium] must necessarily be possessed, in order to manufacture methamphetamine, it is double jeopardy to convict [him] of both offenses.

We review de novo.  *Kern*, 831 N.W.2d at 164.  In situations where "the same act" constitutes "a violation of two distinct statutory provisions, the test . . . to determine whether there are two offenses or only one, is whether each provision requires proof of a fact . . . the other does not."  *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  "If a requisite element of one offense is not necessarily essential to conviction of another offense, then no double jeopardy claim is present."  *Id.*  We turn to the elements of the two offenses.

To prove possession of lithium with intent to manufacture, the State had to show Stephen (1) possessed a product containing lithium and (2) had the intent the product be used to manufacture any controlled substance—here, methamphetamine.  *See* Iowa Code § 124.401(4).

To prove the conspiracy charge, the State had to show (1) Stephen had an agreement with Scopa that one or both of them would manufacture or attempt to manufacture methamphetamine, (2) Stephen entered into such agreement with the intent to promote or facilitate the manufacture of methamphetamine, (3) Stephen or Scopa committed an overt act to accomplish the manufacturing of methamphetamine, and (4) Scopa was not a law enforcement agent or assisting

law enforcement when the conspiracy began. *See id.* § 706.1; *Kern*, 831 N.W.2d at 158.

Our comparison of the elements of the offenses shows neither of Stephen's crimes is the lesser-included offense of the other. *See Blockburger*, 284 U.S. at 304 (finding no double jeopardy where each offense "requires proof of a different element"). The possession-with-intent-to-manufacture offense did not require the State to prove Stephen entered into an agreement with Scopa. Similarly, the conspiracy-to-manufacture offense did not require the State to prove Stephen possessed a product containing lithium. *See, e.g.*, *Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010) (applying Iowa law and ruling cumulative punishment for manufacture of methamphetamine and possession of pseudoephedrine with intent to manufacture methamphetamine did not violate double jeopardy); *State v. Dodge*, No. 99-1503, 2000 WL 1421759, at *4 (Iowa Ct. App. Sept. 27, 2000) (ruling Iowa legislature intended to impose cumulative punishment for the offenses of manufacture of methamphetamine and possession of pseudoephedrine with intent to manufacture methamphetamine where each offense "contained an element not found in the other"). We conclude the district court's sentence did not violate the double jeopardy clause.

## IV. *Brady* Violation

Stephen argues the prosecution failed to disclose Walgreen's receipts showing Scopa had purchased pseudoephedrine. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding due process requires the prosecution to disclose exculpatory evidence to the accused). Stephen contends the evidence was

exculpatory because it shows the pseudoephedrine in the Baggie in the truck was not his but belonged to Scopa.

"Because the basis for relief here is a due process violation, we employ a de novo review" of the [PCR] court's ruling on Stephen's alleged *Brady* violation. *See Harrington v. State*, 659 N.W.2d 509, 519 (Iowa 2003) (holding prosecution committed a *Brady* violation by failing to disclose police reports identifying alternative suspect). To demonstrate a due process violation, Stephen must prove (1) the prosecution suppressed the evidence, (2) the evidence was favorable to Stephen, and (3) the evidence was material to the issue of Stephen's guilt. *See id.* at 521. After our de novo review, we agree with and adopt the [PCR] court's resolution of the issue.

> On or around October 16, 2009, the county attorney received a document showing pharmacy drug purchases by Mr. Scopa. The document showed Mr. Scopa purchased Sudafed, which contains pseudoephedrine, on three occasions between February 20, 2009, and March 30, 2009. The document indicated that the county attorney faxed it to Mr. Balduchi on October 18, 2009. Mr. Balduchi did not have any memory of the document but it was found in his file, thus indicating he had it prior to trial. Prosecutor] DiBlasi likewise had no independent recall of the document, but did not deny it was part of the file.
> . . . .
> The State disclosed the document to the defense prior to trial. The document is of questionable value. Even if Mr. Scopa purchased drugs containing pseudoephedrine that does not mean [Stephen] did not. Moreover, the pseudoephedrine and lithium batteries were tied to [Stephen] because they were found in area of the seat that he was seen apparently stuffing something between the seat cushions, not because the State proved that he had purchased the items. There is no reasonable probability that the outcome of [Stephen's] criminal trial would have been different if [the document] had been provided to Balduchi earlier and he had used the document at trial.

## V.    Insufficient Evidence

**A.    Conspiracy.**   Stephen contends "there is not sufficient evidence to support his conspiracy conviction."   Stephen cannot relitigate this issue, which was decided adversely to him on direct appeal.  *See Holmes*, 775 N.W.2d at 735; *Stephen*, 2011 WL 5393453, at *6-8.

**B.    Possession.**   Stephen argues there was "insufficient evidence to prove [he] had dominion or control over the pseudoephedrine or the lithium" and his "alleged movements are not enough."   Assuming, but not deciding, error was preserved, this issue also was resolved on direct appeal:

> [Stephen] was observed making motions consistent with shoving something between the cushions of the truck's bench seat and when that area was searched, the police officer found both crushed pseudoephedrine and stripped lithium batteries-both precursors to methamphetamine.  The jury could reasonably infer Stephen's furtive movements show these precursors were his.

*See Stephen*, 2011 WL 5393453, at *8.

## VI.    Conclusion

We have analyzed all of Stephen's appellate challenges and any claims not specifically discussed are without merit.  We affirm the PCR court's dismissal of his application.

**AFFIRMED.**