# IN THE COURT OF APPEALS OF IOWA

No. 16-0442
Filed July 6, 2017

**THOMAS ANTHONY MILLER,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Des Moines County, Mark E. Kruse, Judge.

Thomas Anthony Miller appeals from the district court's denial of his application for postconviction relief following his conviction for second-degree murder. **AFFIRMED.**

Curtis Dial of Law Office of Curtis Dial, Keokuk, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee State.

Considered by Vogel, P.J., Doyle, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**GOODHUE, Senior Judge.**

Thomas Anthony Miller appeals from the district court's denial of his application for postconviction relief following his conviction for second-degree murder. We affirm the district court's denial.

## I. Background Facts and Proceedings

Miller was charged with first-degree murder and was found guilty of second-degree murder by a jury. Miller appealed, and this court affirmed his conviction. *See State v. Miller*, No. 04-1785, 2006 WL 228904, at *1 (Iowa Ct. App. Feb. 1, 2006). In the underlying criminal trial, the State had filed a motion in limine regarding Miller's intent to call Sister Nadine Meyer to testify as to the Catholic Church's formal position on suicide. The court had sustained the motion in limine without prejudice to Miller's right to make an offer of proof at trial. Sister Meyer was not called as a witness, and no offer of proof was made. Thus, error was not preserved, and there was no review of the trial court's ruling on direct appeal.

Miller filed this application for postconviction relief asserting his trial counsel was ineffective in failing to make an offer of proof of Sister Meyer's testimony. The facts of the case are set out in *Miller*, 2006 WL 228904, at *1-3, and need not be reiterated except where they specifically relate to the relevancy of Sister Meyer's proposed testimony. Miller contended at trial that he was attempting suicide when the victim, Janet McCammant, interfered with his efforts, and she was accidently stabbed and killed in the ensuing altercation.

The obvious difficulty with Miller's defense was his failure to explain the attempted suicide/accidental stabbing scenario in his initial calls to family

members and statements to the police. Miller called his parents and some of his siblings shortly after the incident and before the police were called. He told his relatives he had stabbed and killed someone but made no mention of the attempted suicide/accident scenario. In his initial discussion with the police, Miller told them he had been drinking with McCammant at a tavern, ordered a cab to take her home, and then had the cab come back and take him to his apartment. In fact, a cab had delivered both McCammant and Miller to his apartment. Miller's brother and his girlfriend had visited the apartment after Miller and McCammant had left the tavern, and both Miller and McCammant were there and nothing was amiss. Later on in his initial interview with the police, Miller corrected himself and stated he and McCammant had arrived at the apartment together, she left, and—unknown to him—she returned. He was awakened by what he thought was an intruder. He did not turn on the light and armed himself with a knife. He told the police he had turned quickly and fatally stabbed McCammant.

At trial, Miller claimed he took the knife and announced to McCammant that he was going to commit suicide by cutting his wrist, McCammant tried to stop him, and she was accidently fatally stabbed in the ensuing struggle. Miller also advanced a defense of intoxication and diminished responsibility. He was interviewed by a clinical psychologist, who testified in his behalf, and a doctor, who testified on behalf of the State. Miller had given both of the medical professionals the attempted suicide/accident version of the events. His explanation of his failure to give the attempted suicide/accident version to the police or his relatives in the initial calls was his aversion to suicide due to a belief

in the sanctity of life as taught by the Catholic faith, to which he and his family subscribed. His intent in calling Sister Meyer was to set out the Catholic Church's official position on suicide.

The postconviction-relief action was tried on stipulation. No effort was made to call Miller's initial trial counsel. However, a deposition of Sister Meyer had been taken before trial. When asked specifically about the Catholic Church's doctrine on suicide, she asserted that suicide was considered a serious and grave offense. She stated she did not know Miller, had no idea what his personal beliefs were, or what he had been taught. She stated that the Catholic faith's aversion to suicide is based on the general opposition to killing, but the aversion to suicide had diminished in the last several years and the training from one parish to another varied to some degree. She further stated that she had no idea what the training or education relative to suicide was in the parish where Miller had been educated. Her testimony amounted to the Catholic Church's adverse position on suicide and nothing more. Contradicting Miller's claim, the record established Miller had threatened and attempted suicide other times in the past and his family was well aware of the threats and attempts.

Miller contends Sister Nadine Meyer's testimony was relevant, his trial counsel was ineffective in failing to make an offer of proof, and the court erred in denying his application for postconviction relief. The State maintains that Miller has failed to meet his burden of establishing his trial counsel was ineffective for not presenting an offer of proof.

## II. Error Preservation

When an issue is raised before the court and ruled on by it, error has been preserved. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). The failure of trial counsel to make an offer of proof was raised before and decided by the postconviction trial court. Error has been preserved.

## III. Scope of Review

Appeals from the denial of a postconviction-relief proceeding are ordinarily reviewed for correction of errors at law, but when a constitutional issue is involved, it is reviewed de novo. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

## IV. Discussion

To prevail on a claim of ineffective assistance of counsel, the claimant must prove by a preponderance of the evidence that: (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). If no prejudice is shown, a claim can be dismissed on that ground alone. *Id.* A claim of ineffective assistance must overcome the presumption that counsel is competent. *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984). An accused is not entitled to perfect representation but only the level of representation that is within the normal range of competency. *State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). For relief to be granted, there must be a determination that but for counsel's ineffective assistance, there is a reasonable probability the result would have been different. *Ledezma*, 626 N.W.2d at 145. Counsel is not ineffective for failing to make a meritless objection. *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011).

The only possible argument for relevancy of Sister Meyer's testimony was to explain that Miller did not initially tell the police or his relatives about the suicide/accident scenario he related at trial because of his and his family's aversion to suicide based on their religious faith. Sister Meyer was only able to state the general position of the Catholic Church regarding suicide. She did not know Miller, his specific beliefs, the education he may have received on the issue, or the beliefs of his family. She stated she had never been in the parish where Miller received his training and training varies from parish to parish. She further stated the Catholic Church's opposition to suicide had softened somewhat over her lifetime. It was Miller's and his family's beliefs regarding suicide, and not the official position of the Catholic Church, that was relevant to his inconsistency. Miller's beliefs, his parents' beliefs, and the teachings he received in his Catholic training had not deterred him from threatening or attempting suicide on prior occasions. Finally, the suicide/accident scenario presented at trial was not only omitted in his initial discussion with his family, who were arguably religiously sensitive to suicide, but also contradictory to what he had told the police. Sister Meyer's testimony was not relevant to any justiciable issue before the court or jury. Counsel has no obligation to make a meritless offer of proof. *Id.*

Also related to the relevancy issue, there was no showing Sister Meyer's testimony would have had any effect on the outcome of the trial. No prejudice has been shown as the result of counsel's failure to make an offer of proof, and therefore, Miller's claim fails. *See Ledezma*, 646 N.W.2d at 142.

Miller has failed to prove counsel breached a duty or that prejudice resulted.  The decision of the trial court is affirmed.

**AFFIRMED.**