# IN THE COURT OF APPEALS OF IOWA

No. 16-0825
Filed September 13, 2017

**LUCAS A. MCALISTER,**
　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　Respondent-Appellee.
_____

Appeal from the Iowa District Court for Des Moines County, John M. Wright, Judge.

The applicant appeals the district court decision denying his request for postconviction relief from his conviction for first-degree robbery.  **AFFIRMED.**

Kent A. Simmons, Bettendorf, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Vogel, P.J., Potterfield, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**GOODHUE, Senior Judge.**

Lucas A. McAlister was convicted of first-degree robbery by a jury's verdict rendered in 2004. He appealed, and the conviction was affirmed. McAlister filed an application for postconviction relief (PCR) in January 2008. His application was denied, and McAlister appeals. We affirm.

## I. Factual Background

The facts leading up to the charges and conviction are set out in this court's ruling affirming the conviction and are not repeated except where relevant to this proceeding. *See State v. McAlister*, No. 05-2004, 2006 WL 1896216, at *1-2 (Iowa Ct. App. July 12, 2006). McAlister claimed ineffective assistance of counsel in the direct appeal and has based his PCR on other claims of ineffective assistance. McAlister claims as follows: (1) trial counsel was ineffective for failing to pursue a plea agreement in a timely fashion and for failing to advise him of the pitfalls of going to trial and (2) in failing to effectively investigate medical evidence and failing to pursue a motion for a new trial that would have demonstrated McAlister was found guilty on the basis of an improper expert medical opinion that had no foundation in medical science.

## II. Preservation of Error

Both issues were raised before the trial court, and the State concedes the issues were preserved.

## III. Standard of Review

Appeals from denial of PCR are ordinarily reviewed for corrections of errors at law, but when a constitutional issue, such as a claim of ineffective

assistance of counsel, is involved, it is reviewed de novo. *Lemasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

**IV. Merits**

*A. Ineffective Assistance of Counsel Generally*

To prevail on a claim of ineffective assistance of counsel, the claimant must prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). A claim of ineffective assistance of counsel must overcome the presumption that counsel is competent. *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984). An accused is not entitled to perfect representation but only that level of representation that is within the normal range of competency. *State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). Strategic choices after proper investigation are virtually unassailable. *Ledezma*, 626 N.W.2d at 143. For relief to be granted, there must a determination that but for the ineffective assistance there is a reasonable probability the result would have been different. *Id.* at 145. It is not enough to simply allege counsel's performance was inadequate; the specific instances of inadequacy and how competent representation would have probably changed the outcome must be pointed out. *Dunbar v. State*, 515 N.W.2d 12, 15 (1994).

*B. Trial Counsel's Ineffectiveness for Failing to Pursue a Plea Agreement in a Timely Fashion and Failing to Advise Him of the Pitfalls of Going to Trial.*

The burden is on McAlister to prove his claim. Depositions of both McAlister's trial counsel and the prosecuting attorney were taken and made a part of the PCR record. It is clear from the record that McAlister's counsel made

numerous requests to obtain a plea offer, and his requests were rejected until only three or four days before the trial, when the prosecutor offered to allow McAlister to plead guilty to two class "C" felonies and argue sentencing. The offer was rejected by McAlister.

McAlister asserts his counsel advised him a verdict of guilty to second-degree robbery would be the worst possible outcome. Trial counsel stated he absolutely did not advise McAlister of a likely outcome of the trial and his policy was to never advise a client of the outcome of a trial. McAlister's counsel discussed the plea offer with McAlister and his father. Counsel told McAlister's father he did not feel good about going to trial but could not predict the outcome. McAlister's father encouraged McAlister to think about the offer. McAlister responded he felt good about his chances, and he asserted he did not want to enter a plea of guilty to something he did not do.

As indicated, the plea offer was communicated to McAlister only a few days before trial. McAlister also contended there was a 5:00 p.m. deadline on the offer and the last deposition was not finished until one hour before the deadline. No one else, including McAlister's father, remembered that there was a 5:00 p.m. deadline. The prosecutor testified there could have been a deadline but his notes did not indicate a 5:00 p.m. deadline nor did he remember that there was one.

McAlister is relying on nothing more than his self-serving statement that he would have accepted the plea offer if it had been offered earlier. McAlister has not objectively established the required reasonable probability he would have accepted the offer if made earlier. *See Dempsey v. State*, 860 N.W.2d 860, 871

(Iowa 2015). McAlister contends the plea offer was not advanced by the prosecutor until his counsel had advised the prosecutor of McAlister's relationship with a local drug task force. McAlister asserts if the prosecutor had known of his work with the task force earlier, he would have received an earlier offer. The prosecutor testified he knew McAlister had approached the drug task force about being a confidential informant but had not done any work for them. The prosecutor further testified the plea offer was not made because of McAlister's offer to work for the task force; instead, it was made because Darren Taeger, the victim, was a confirmed drug dealer and he feared jury nullification because of the victim's criminal activities. McAlister's counsel testified the thrust of the defense was the hope that McAlister was more credible and convincing than the victim and McAlister's co-defendant, Clayton McCormick, who, after a plea offer, became a witness for the State.

McAlister was jailed with his co-defendant the first seventy-one days of his incarceration. When first interviewed, McAlister admitted stabbing the victim but claimed self-defense. An officer became aware of the co-occupancy, was aware that such co-occupancy of co-defendants was against the jail's policy, and took immediate steps to separate the two co-defendants. Apparently, both co-defendants met with law enforcement soon after their separation, and each asserted the other one was the actual perpetrator of the stabbing. The victim had always asserted McAlister was the one who did the stabbing. The prosecutor made the plea offer to McCormick as opposed to McAlister because his revised version of the events matched the victim's.

McAlister was later moved to a cell where he shared a recreational area with William Lucas, who was charged with murder. Thinking McAlister could help with his defense, Lucas wrote out the details of the murder and gave it to McAlister. McAlister gave it to his counsel, who gave it to law enforcement. The handwriting was verified, and the letter was used by the prosecution in its case against Lucas. Neither McAlister nor his counsel requested anything in return for the letter. McAlister does not assert exactly how counsel breached a duty in handling the letter but insinuates, without stating as much, that the information should have been used for a bargaining chip. There was no evidence the prosecutor would have considered it as an effective bargaining chip.

McAlister contends that if counsel did not advise him of the probable outcome of his trial, that failure would be per se ineffective assistance. However, McAlister has cited no authority for such an assertion. We do not believe that failing to advise a client of the probable outcome of trial is ineffective assistance of counsel. Trial counsel who predict the outcome of trial do so at their own peril. *See State v. Franke*, No. 02-0761, 2003 WL 22336096, at *5 (Iowa Ct. App. Oct. 15, 2003) (preserving for PCR proceedings a claim counsel improperly predicted unlikelihood of a guilty verdict).

Counsel did not fail in his duty to attempt to negotiate and obtain a plea offer or to properly advise McAlister to accept or reject the offer made.

*C. Counsel's Failure to Investigate and Present Evidence that Would Have Shown Applicant Was Found Guilty on the Basis of Improper Opinion Testimony that Had No Basis in Medical Science.*

The incident happened in a Bronco or Blazer with bucket seats. McAlister was driving the vehicle, the victim was seated on the passenger side, and

McCormick was in the back seat of the vehicle. McAlister stopped the vehicle at a stop sign when, according to McAlister's testimony, McCormick came up from the back seat and stabbed the victim. McCormick and the victim claim McAlister swung over from the driver's side and stabbed the victim.

At trial, McAlister's counsel asked Officer Michael Swore, the investigating officer, if he was aware of any reason the perpetrator could not have "come from any particular angle or couldn't have come from the back seat. Are you aware of any such evidence?" The officer responded, "I don't know of anything that said it couldn't have come from the back seat." Officer Swore then expanded, based on his experience as a law enforcement officer, stating he found it almost impossible to believe someone the size of McCormick could have inflicted the wound the victim received from the back seat of the vehicle. This was not the way Officer Swore had testified at his deposition in an answer to approximately the same question, and it was not the answer counsel anticipated.

Officer Swore continued testifying about body position and how to obtain the necessary torque to do the stabbing. He then testified about the wound the victim suffered, its depth, and location. He admitted that he knew of no medical records of the angle or depth of the wound and admitted he was relying only on his experience as a crime and accident investigator and statements other officers had told him the treating doctors had made.

Counsel requested the officer's testimony about what another officer had said about the doctor's statement be struck from the record, but the request was denied. Soon thereafter and out of the presence of the jury, counsel moved for a mistrial or to have the investigator's statement stricken from the record. Counsel

pointed out that before trial, the State and McAlister had stipulated the victim had suffered a serious injury and no medical professional would be called by either side. McAlister's trial counsel stated, in essence, that he had been ambushed. If he had known evidence regarding the depth of the stab wound and presumably the torque that could be generated from different positions would be given, he would have had a professional available to testify on the issue. Further, he objected the detective was not an expert and his opinion was based on hearsay.

The officer's theory the perpetrator could not have been in the back seat was completely new to defense counsel. The court refused to declare a mistrial or strike any of the officer's testimony. The court's ruling was based in part on the determination the officer's testimony was not an expert opinion but based on the common knowledge that more torque could be achieved by a swinging action than a pulling action and, in part, on the fact the evidence was elicited by a question posed on cross-examination. The court noted both counsel were making "a mountain out of a mole hill."

We also do not understand why who stabbed the victim was such a critical issue given the availability of the aiding and abetting statute and the admitted planning of the robbery by both McAlister and McCormick. *See* Iowa Code § 703.1 (2003). What the prosecutor thought about who did the stabbing might have had a bearing on the issue as to who he made a plea offer to, but neither the court nor defendant's counsel control a prosecutor's decision as to whom to make a plea offer or what kind of a plea offer to make.

McAlister did not claim ineffective assistance of appellate counsel but instead contends that appellate counsel determined the issue should be left to

build a complete record in a PCR hearing. In pursuit of that objective, McAlister obtained an opinion from Dr. Shaku Teas, a board certified forensic pathologist. Dr. Teas provided an affidavit for the PCR hearing, noting there was no scientific basis for Officer Swore's opinion. The depth of the wound was primarily determined by the sharpness of the knife. The knife was never found because either McCormick or McAlister had thrown it in the river. The affidavit also stated,

> It is my opinion that [a] person seated in the back seat of the Explorer could inflict the stab wound [the victim] incurred with either his right or left hand. A person seated in the driver's seat could have inflicted the wound too but more likely with his left hand/arm.

McAlister's final contention is counsel was ineffective for not pursuing an expert testifying like Dr. Teas as a basis for requesting a new trial under Iowa Rule of Criminal Procedure 2.24(2)(b)(6), (7), or (9). The subparagraphs cited require (1) the verdict to be contrary to the evidence, (2) the court to have refused properly to instruct the jury, or (3) the defendant to have not received a fair trial. McAlister does not point out how his case would fit under any of the stated conditions that would justify a new trial. An attorney is not required to pursue a meritless claim. *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011).

The evidence is overwhelming a robbery took place and a serious injury resulted. In addition, the victim, the other participant, and McAlister in his original statement all agree McAlister was the one inflicting the injury. Even if McAlister's counsel somehow failed in any duty, no prejudice has been shown. *See Ledezma*, 626 N.W.2d at 142. Generally, the courts do not control or direct to whom or what type of a plea offer a prosecutor should make to a particular

defendant or co-defendant. We conclude McAlister has not established his counsel was ineffective.

**AFFIRMED.**