**IN THE COURT OF APPEALS OF IOWA**

No. 22-0858
Filed November 21, 2023

**KENNETH RAPHAEL MOORE,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Joseph Seidlin, Judge.

Kenneth Raphael Moore appeals the denial of application for postconviction

relief. **AFFIRMED.**

Karmen Anderson, Des Moines, for appellant.

Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney

General, for appellee State.

Considered by Bower, C.J., and Ahlers and Chicchelly, JJ.

**BOWER, Chief Judge.**

Kenneth Raphael Moore appeals the denial of his application for postconviction relief (PCR), contending plea counsel were constitutionally ineffective on three grounds, thus entitling him to a new trial. Because Moore failed to prove either a breach of essential duty or the requisite prejudice, his ineffective-assistance-of-counsel claims fail. We affirm.

In 2015, at age seventeen, Moore shot and killed a man. On September 8, 2017, after the court found Moore's competency to stand trial had been restored,[1] Moore and the State entered into a plea agreement and Moore pleaded guilty to second-degree murder and first-degree robbery. Moore admitted he "went over to [another's] residence with the intention to rob [the other] of cash. And when it didn't go right, [Moore] shot him, and he died as a result." Moore acknowledged the shooting was intentional. He was sentenced pursuant to the plea agreement to consecutive terms not to exceed seventy-five years with no mandatory minimum.

In 2018, Moore filed a PCR application asserting plea counsel were ineffective in failing to (1) secure a child-development psychologist to determine if his mental illness deprived him of the ability to form specific intent, (2) assert an insanity defense and secure an expert to determine if he suffered from insanity at the time of the killing, and (3) challenge a missing photo lineup as a *Brady* violation.[2]

---

[1] Moore was twice referred for competency testing at the Iowa Medical Classification Center. Moore had ceased to take his prescribed mental-health medications prior to each referral.

[2] Under *Brady v. Maryland*, the United States Supreme Court determined the prosecution violates a defendant's due process rights when there has been a suppression of material evidence favorable to the defendant. 373 U.S. 83, 86

At the trial, Moore testified in support of his PCR application. The following excerpts are indicative of Moore's assertions:

> Q. . . . Did you discuss your mental health issues with any of those individuals? A. A lot of that stuff—I just went through—I talked about probably being the defense, but what they told me was about insanity not really working at Iowa because it's looked at—how it's looked at by the majority of the state.
>
> And then [plea counsel] said diminished capacity could be a possibility, but it would only get the murder dropped to a murder two. So yeah.
>
> . . . .
>
> Q. Anything else that you want to add on the issue of obtaining an expert? A. . . . I mean, clearly—clearly at the time that I was— [after residential treatment] from Independence, Iowa, even after I was arrested and being incarcerated and locked up in jail and prison, there's been issues raised on my mental health now. And I'm still civilly committed now as to the point where they say without—if I miss one dose, I would get violent.
>
> So if I was six months out of the asylum before I knew and I was taking all these drugs and a juvenile and they don't tell me it's going to mess with your chemistry, because you're put on an antipsychotic at a high dose, stuff like that, you know, the robbery and all that stuff was—I'll wait to speak on that and all that stuff.
>
> . . . .
>
> Q. Kenny, is it your belief that if you would have taken this case to trial that you would have been convicted of something less than murder in the first degree or murder in the second degree? A. At least less than murder in the first degree, yes.
>
> . . . .
>
> Q. So would you agree that diminished capacity as a defense wouldn't have been any better for you than pleading guilty; right? Do you agree with that? A. Yes, I agree.
>
> Q. Okay. So really it's the self-defense and insanity defense that you wish they had pursued; right? A. Or manslaughter or something less than the time I have now, yes.

The State offered the transcript of Moore's plea proceeding and deposition testimony of Moore's plea attorneys. The court also took judicial notice of the entire criminal file. The trial court carefully considered Moore's claims and concluded:

---

(1963). The *Brady* rule applies to exculpatory, as well as impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985).

(1) Moore cannot prove the requisite prejudice—even were the court to assume counsel failed to perform an essential duty in not retaining an expert in child-development psychology who might find Moore was unable to premeditate, it would be relevant only to first-degree murder. But Moore pleaded guilty to second-degree murder. (2) Because there was a viable alibi defense,[3] counsels' decision not to pursue an insanity defense "was a reasonable tactical strategy, and not inattention to the responsibilities of an attorney." (3) Moore failed to prove a *Brady* claim could be made, so he failed to prove counsel breached an essential duty in not raising the issue. Moore now appeals.

"A defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015). "[A]ll [PCR] applicants who seek relief as a consequence of ineffective assistance of counsel must establish counsel breached a duty and prejudice resulted. We may affirm the district court's rejection of an ineffective-assistance-of-counsel claim if either element is lacking." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (first alteration in original) (internal quotation marks and citations omitted).

We presume counsel acted competently, but Moore can overcome that presumption by proving his "counsel's performance 'fell below the normal range of competency.'" *State v. Krogmann*, 914 N.W.2d 293, 306 (Iowa 2018) (citation omitted). "Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001). "Counsel is required to conduct a reasonable

---

[3] After obtaining cell phone tracking data provided by the State, counsel determined the alibi defense was less promising.

investigation or make reasonable decisions that make a particular investigation unnecessary." *Id.* "While strategic decisions made after 'thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,' strategic decisions made after a 'less than complete investigation' must be based on reasonable professional judgments which support the particular level of investigation conducted." *Id.* (citation omitted).

To prove prejudice, Moore "must show that there is a reasonable probability that, but for counsel's errors, . . . [he] would not have pleaded guilty and would have insisted on going to trial." *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021) (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citation omitted).

A PCR applicant's claim of ineffective assistance of defense counsel raises a constitutional claim, so our review is de novo. *Id.* We give weight to the findings of the district court, especially concerning the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.903(4)(g).

With respect to Moore's claim counsel were ineffective in failing to retain an expert in child-development psychology, Moore is unclear as to how an expert would have helped him. He mentions the inability to form specific intent and premeditation. But he evaded the first-degree-murder charge for which those issues are relevant, and we are unable to determine how he otherwise claims he was prejudiced.

Turning to the failure to raise an insanity defense, his lead counsel,[4] Gerald "Jake" Feuerhelm, testified he observed little to support such a claim:

> My interaction with Kenny, again, recognizing that sometimes he has some odd ideas and sometimes he would write songs and rap in tiny, tiny print and share those with you, as I said on my direct examination, we were always able to come back and talk about facts of the case and what we were doing and where we were going and alibi and so forth. And I never felt frustrated with Kenny's ability to understand or cooperate with us.

The second chair attorney, Paul Statler, remembered being informed Moore had recently been restored to competency, noted Moore indicated his medication made him tired, but otherwise Statler had no real concerns. He did note Moore was "very, very confident" he would be exonerated—perhaps unrealistically.

In any event, Feuerhelm testified Moore's strongest defense was identification because Moore's sister was a possible alibi witness.[5] In investigating further, a cell phone photo was produced and a photo lineup was shown, and "whatever that process was, it brought into question the identification of Kenny, and that led to us seeking an expert witness." Kimberly MacLin was retained and opined the police identification "protocol or procedure was not the best that was used by the police." Plea negotiations continued, as did depositions and investigation.

Feuerhelm testified the State's expert in cell phone towers was deposed and the testimony about Moore's activities and movements "was extremely

---

[4] There was another attorney involved earlier but he withdrew, and Feuerhelm was appointed as lead counsel.

[5] Statler stated "there was a lot more meat to an alibi, as well as witness identification issues. I think those were the more triable or more viable points for a defense."

competent" and "would have been convincing to a jury" and not helpful to the defense. That deposition "prompted" Feuerhelm to encourage Moore to consider a plea agreement.

Moore maintains the loss of the photo lineup constituted a *Brady* violation, so counsels' failure to raise the claim was a breach of duty. "We will not find counsel incompetent for failing to pursue a meritless issue." *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011), *abrogated on other grounds by State v. Crawford*, 972 N.W.2d 189 (Iowa 2022). Thus, we first address whether Moore has shown there was a *Brady* violation to assert.

"To establish a *Brady* violation has occurred, [the applicant] must prove by a preponderance of the evidence '(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt.'" *DeSimone v. State*, 803 N.W.2d 97, 103 (Iowa 2011) (citations omitted); *accord State v. Barrett*, 952 N.W.2d 308, 312 (Iowa 2020). Moore has provided no evidence the prosecution suppressed the evidence or that the evidence was favorable to him.

Defense counsel Feuerhelm's testimony does not support the first or second element. Though the photo lineup could not be located, Feuerhelm testified the county attorney "kept us in the loop." Feuerhelm did not suspect the prosecution was hiding the lineup or any foul play; rather, he "sensed that there was true frustration about why that lineup couldn't be located." He also testified that while the photo lineup might have been helpful, it could also have been harmful, and its absence provided some fodder for the defense.

Defense counsel Statler testified about the lost lineup photo array; he said the officer who conducted the lineup died during the course of the case and the lineup should have been in his file "but other officers couldn't find it." Statler noted there was no push to claim a *Brady* violation:

> So the lack of it was almost better because we could then just say, "Where is the lineup? They don't even have it. They are saying these people picked them out, but they didn't even keep it?" So just from a pure strategy standpoint, at least me personally, I think to have pushed it would have potentially backfired.

Moreover, Statler testified he had no reason to believe the State intentionally destroyed or withheld the photo array. On our de novo review, we conclude counsel breached no duty in not challenging the missing photo lineup as a *Brady* violation.

Under a heading of ineffective assistance of PCR counsel, Moore contends his PCR counsel did not attempt to hire or call an expert or offer medical records to support Moore's claims and "could have done so." Yet Moore fails completely to establish a reasonable probability of a different outcome of the PCR proceeding if counsel had produced this additional information. Consequently, the claim fails for failure to establish prejudice. We affirm the dismissal of Moore's PCR application.

**AFFIRMED.**