# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-2021
Filed May 27, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Vernon Lee Johnson,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Decatur County,
The Honorable David Faith, Judge.

———————————

**AFFIRMED**

———————————

John C. Heinicke of Kragnes & Associates, P.C., West Des Moines,
attorney for appellant.

Brenna Bird, Attorney General, and Katherine Wenman, Assistant Attorney
General, attorneys for appellee.

———————————

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Greer, P.J.

1

**GREER, Presiding Judge.**

After Vernon Johnson was convicted of possession of a controlled substance, first offense, in violation of Iowa Code section 124.401(5) (2023),[1] he asks us to find that the evidence was insufficient to establish an element of the crime—that he possessed marijuana.  Johnson successfully blocked the admission of the field testing done on the substance found in his vehicle because of the State's late disclosure.  With only the testimony of the troopers, Johnson argued the State failed to provide reliable evidence that the substance found in his vehicle was marijuana instead of hemp flower.  Johnson urges he is entitled to a new trial.

The State contends that the testing of the substance was unnecessary to meet their burden of proof because the troopers on scene were experienced and could testify about the substance based on their training and field experience.  We find there was substantial evidence in the record to support the verdict, and thus we affirm his conviction.

## I.  Background Facts and Proceedings.

On July 15, 2023, Trooper Matthew Bowlin, who had been with the Iowa State Patrol since 2019 and certified through the Iowa Law Enforcement Academy since 2013,[2] was on patrol in Decatur County along with Trooper Anthony Salato.  Trooper Salato started as a trooper in January 2023 but previously worked as a sheriff's deputy for over two and a half years.  Trooper Bowlin was riding along with Trooper Salato and "was field training him."  They clocked Johnson traveling on Interstate 35 going over ninety-miles-per-hour in a seventy-mile-per-hour zone, initiated their vehicle lights, and then

---

[1] Johnson was also convicted of several other crimes not relevant to this appeal.

[2] Trooper Bowlin had also worked as a deputy sheriff from 2013 through 2019.

when Johnson did not stop, turned on the sirens. Johnson finally pulled over at a Missouri rest stop. Trooper Salato observed the driver of the vehicle "moving around frequently," which according to his training meant the driver was trying to move things to hide them from view. Once stopped, both troopers approached Johnson's vehicle. When Trooper Bowlin reached the passenger side, he smelled "fresh" marijuana coming from inside the vehicle. When Trooper Salato approached the driver's side, he smelled the "strong odor of marijuana" and observed a "marijuana bud" hanging on Johnson's shirt. Trooper Salato searched the vehicle and recovered (1) thirty-nine grams of a green, plant-like substance in five separate baggies and (2) a digital scale. Trooper Salato found the baggies in what Johnson called his "party bag." Near the driver's seat, there were burnt-marijuana-like cigarettes in glass jars that were being used as ashtrays.

Neither trooper had any specialized training in the identification of hemp flower versus marijuana bud, but Bowlin testified he had "on-the-job" training to recognize the controlled substance marijuana. From his training, Trooper Bowlin stated he knew the unique odor of marijuana, and there was no question in his mind the vehicle had marijuana in it. Trooper Salato also smelled marijuana but had no previous experience with what a raw hemp flower looked like, although he did undergo training that addressed substance identification both at the Iowa Law Enforcement Academy and at the Iowa Department of Public Safety Academy.

Johnson's case was set for trial in July 2024. But, the day before trial, a field test of the substance was done, and the results were produced that same day to Johnson. Johnson moved in limine to prohibit admission of the test results at trial. Because of the late disclosure, the district court granted the motion. The district court ruled that once foundation was established,

the troopers could testify as to their knowledge or experience, but there could be no reference to the field testing or the results.

After a day-long trial, the jury returned a verdict, which included a finding of guilt as to the possession of marijuana charge. Johnson moved for a new trial and in arrest of judgment raising the argument that there was insufficient evidence to find him guilty of possession of a controlled substance—marijuana. In Johnson's motion for new trial, he argued:

> In fact, Trooper Bowlin or Trooper Salato, or possibly both, admitted that raw hemp flower smelled and looked like marijuana. Trooper Salato confirmed that raw hemp flower is sold in similar packaging to that found in the backpack in defendant's trunk. Based upon the weight of the evidence standard, the evidence presented to this jury may equally identify these substances as raw hemp flower as much as it may identify the substances as marijuana. Because Iowa law now excepts consumable hemp products from the definition of marijuana, it is necessary for law enforcement to separate the identification of marijuana from cannabis based on the percentage of Delta-9 THC. *See* Iowa Code §§ 124.204(4)(u)(2), 124.204(7)(a)–(b) (2023). A visual observation that plant material appears to be cannabis does not mean that it is marijuana. An officer cannot determine the concentration of Delta-9 THC by visual observation. That requires semi-quantitative instrumental testing to differentiate between marijuana, which contains more than 0.3% Delta-9 THC, and legal hemp.

> Furthermore, raw hemp flower is legal to sell and possess in the state provided there is no intent to use it in a prohibited manner such as inhaling the smoke produced by combustion. Iowa Code § 204.14A (2023). Hemp flowers grown in Iowa and available for retail purchase are visually indistinguishable from marijuana according to the testimony of Trooper Salato. The only difference between raw hemp and marijuana flower is the concentration of THC below the 0.3 percent threshold.

Applying the weight of the evidence standard, the district court denied the motions finding that "the law enforcement witnesses [were] highly

4

credible based on their professional experience, lack of motivation to dissemble, the consistency and reasonableness of their explanations, and observations of their demeanor on the witness stand, which was forthright, direct, and open." Johnson appeals.

## II.  Standard of Review.

Challenges to the sufficiency of the evidence are reviewed for the correction of errors at law.  *State v. Lindaman*, 30 N.W.3d 547, 554–55 (Iowa 2025).  We are highly deferential to the jury's verdict as it binds us if it is supported by substantial evidence.  *Id.* at 555.  "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (cleaned up).

## III.  Analysis.

Without a field test to prove the substance was marijuana, was there enough other evidence in the record to provide sufficient evidence of the crime of possession of marijuana under section 124.401(5)?  As the jury was instructed, the State had to prove the following elements:

> 1. On or about 15th day of July, 2023, [Johnson] knowingly and intentionally possessed marijuana.
>
> 2. [Johnson] knew that the substance he possessed was marijuana.
>
> If the State has proved both of these elements, [Johnson] is guilty of possession of a controlled substance.  If the State has failed to prove either of the elements, [Johnson] is not guilty.

Here, Johnson made no admissions that he possessed marijuana and the admission of the field test conducted on the substance was denied due to late disclosure. So, we are left with whether the testimony of the two troopers and any of the exhibits provide substantial evidence to support each of the elements of the charge. Johnson points to *State v. Brubaker* as the authority supporting his request for a new trial. 805 N.W.2d 164, 173–74 (Iowa 2011) (finding that the criminalist's testimony about the appearance of pills found in defendant's car was insufficient evidence, without more, to prove unlawful possession of a prescription drug; thus, dismissal was required on remand), *abrogated on other grounds by State v. Crawford*, 972 N.W.2d 189 (Iowa 2022). But, "[w]e have always recognized that, for a person to be convicted of a drug offense, the State is not required to test the purported drug." *Id.* at 172. Officers' testimony may identify a substance as marijuana beyond a reasonable doubt. *State v. Mumford*, 14 N.W.3d 346, 354–55 (Iowa 2024) (collecting cases).

In reviewing the testimony, Trooper Salato smelled the strong odor of marijuana as he neared the vehicle, and he found glass containers used as ashtrays and what appeared to be marijuana "roaches" within Johnson's reach in the vehicle. He also remembered that Johnson told him that he smoked marijuana. In his search of the trunk, Trooper Salato found a digital scale and five plastic bags of a green, leaf-like substance weighing together thirty-nine grams, which he said smelled like marijuana. Prior to stopping Johnson, Trooper Salato observed Johnson moving around in his vehicle, which in the trooper's experience meant that the driver was trying to move items in the vehicle and hide them.

Yet, both troopers admitted that they did not have training in the identification of raw hemp flower versus marijuana. Trooper Bowlin did not

know what hemp looked like, but Trooper Salato knew hemp to be similar in appearance, packaging, and odor as marijuana. Both troopers knew that hemp contains some amount of THC.

As for Trooper Bowlin's testimony, he also described the strong odor of marijuana coming from Johnson's vehicle as he approached the passenger side. He confirmed to the jury that the recovered "[g]reen plant-like substance . . . emitted the odor of marijuana which from [his] training and experience and multiple arrests of possession of marijuana [he] knew to be marijuana." The jury also viewed the exhibits, which included photographs of five small packages of a green, leafy plant substance and a small digital scale taken from Johnson's vehicle. Trooper Bowlin tied the use of a scale with the possession of marijuana as a scale is "utilized when someone measures [marijuana] out, weighs [marijuana] out, in order to make sales of [marijuana]."

Johnson argues that the most that can be gleaned from the troopers' testimony "is that the substance in Johnson's car looked like and smelled like marijuana." But the testimony was more nuanced than Johnson argues. "The identity of a substance as an illegal drug may be proved by circumstantial evidence." *In re C.T.*, 521 N.W.2d 754, 757 (Iowa 1994) (citing cases providing support for this proposition); *see also State v. Randel*, No. 24-1077, 2025 WL 2233428, at *6 (Iowa Ct. App. Aug. 6, 2025) ("[T]he State need not disprove the possibility that a substance alleged to be marijuana is legal hemp."). The troopers, both trained in recognizing the look and smell of marijuana, noticed the strong smell of marijuana as they approached the vehicle and established that the packages smelled like marijuana and were packaged like marijuana that would be sold. The digital scale also offered support for the evidence that the packages held marijuana. On top of that

evidence, other circumstantial evidence combined to support the proof that Johnson possessed marijuana, including but not limited to: his actions before the vehicle stopped, the marijuana bud observed on his shirt, and the presence of marijuana-like roaches in the glass jars serving as ashtrays.

Viewing the record in the light most favorable to the State, a reasonable jury could conclude, beyond a reasonable doubt, that the substance Johnson possessed was marijuana. Thus, we find substantial evidence to sustain the verdict.

## IV. Conclusion.

Having found that, in the light most favorable to the State, substantial evidence exists to support the jury verdict, we affirm Johnson's conviction.

**AFFIRMED.**