# IN THE COURT OF APPEALS OF IOWA

No. 20-1624
Filed November 3, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TIMOTHY ROY NEADES,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Coleman McAllister,

Judge.


        Timothy Neades appeals his conviction for possession of marijuana with

intent to deliver. **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant

Attorney General, for appellee.


        Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**SCHUMACHER, Judge.**

Timothy Neades appeals his conviction for possession of marijuana with intent to deliver. He argues there is insufficient evidence he had possession of drugs and there is insufficient evidence the substance was marijuana. We find there is substantial evidence to support the conviction. As a result, we affirm.

## I. Background Facts and Proceedings

On July 23, 2020, two Polk County Sherriff's deputies—Deputy Bach and Deputy Nguyen—initiated a stop on a vehicle driven by Neades because the vehicle's license plates were registered to another car. Two more occupants, Mari Ridley, and a man identified as Travis, were in the car. Mari rode in the front passenger seat and Travis rode in the rear-right seat.[1] Neades stated they were returning from a trip to Walmart. The car contained multiple shopping bags from the store. After informing the deputies he did not have a driver's license or vehicle insurance, Neades was asked to exit the vehicle. Neades also told deputies the car belonged to his girlfriend. The deputies took Neades back to the patrol car, leaving Mari and Travis unattended for a few minutes. After Neades's removal, one of the deputies spoke with Mari, who remained in the front passenger seat. She initially told the deputy her name was Shari, but Neades informed the deputies that her name was Mari. Neades told the deputies he had just met Travis that day.

The deputies arrested Mari for several outstanding warrants. After she was arrested, she was placed in front of the cruiser's dash-cam for about three minutes,

---

[1] There is some confusion over the identity of the man in the backseat. Neades called him Trevor at trial, but most of the proceedings below refer to him as Travis. For the sake of consistency, we refer to him as Travis.

partially blocking the dash-cam's view of the vehicle. Travis was alone in the vehicle during this time and neither deputy watched him closely. The deputies then moved Mari to the backseat of the cruiser. They also had Travis exit the vehicle, and Travis and Neades stood together away from the vehicle for the rest of the encounter. Travis summoned a cab for a ride home and left the scene on foot.

The deputies impounded the vehicle because of the mismatching license plates. Deputy Bach conducted an inventory search, during which he found two methamphetamine pipes, one in the center console and one in the glove compartment. Upon this discovery, Deputy Bach conducted a probable cause search of the rest of the car. He discovered a black pouch on the floorboard behind the driver's seat. Neades admitted the black pouch belonged to him. The pouch contained Neades's state-issued identification card, his social security card, a small digital scale, and eight baggies containing plant material. Neades denied any knowledge of the baggies and their contents.

Neades was charged and convicted following a bench trial of possession of marijuana with intent to deliver as a habitual offender and as a second offender, in violation of Iowa Code sections 124.401(1)(d), 124.411, 902.8, and 902.9(1)(c) (2020).[2] Neades appeals.

---

[2] Neades was acquitted on charges of fraudulent use of registration and possession of drug paraphernalia. He was also found guilty of driving on a suspended license and failure to provide proof of financial liability. He stipulated to prior convictions. Neades only appeals his possession with intent to deliver conviction.

## II. Standard & Scope of Review

We review claims challenging the sufficiency of the evidence for corrections of error at law. *State v. Lilly*, 930 N.W.2d 293, 298 (Iowa 2019). "[W]e will uphold a verdict if substantial record evidence supports it." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (quoting *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006)). "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Harris*, 891 N.W.2d 182, 186 (Iowa 2017). The standard applies equally to jury trials and bench trials. *State v. McFadden*, 320 N.W.2d 608, 614 (Iowa 1982). "In making determinations regarding the sufficiency of the evidence, we 'view the evidence in the light most favorable to the State, regardless of whether it is contradicted, and every reasonable inference that may be deduced therefrom must be considered.'" *Lilly*, 930 N.W.2d at 298 (quoting *Harris*, 891 N.W.2d at 186). Evidence can be circumstantial or direct.[3] *Id.*

## III. Analysis

Neades was convicted of unlawful possession of a controlled substance with the intent to deliver. He argues there is insufficient evidence to establish that

---

[3] Neades argues when the State relies wholly on circumstantial evidence to prove an essential element of a crime, the evidence must be "entirely consistent with [the] defendant's guilt, wholly inconsistent with any rational hypothesis of his innocence, and so convincing as to exclude any reasonable doubt that the defendant was guilty of the offense charged." *State v. Reeves*, 209 N.W.2d 18, 21 (Iowa 1973). However, the supreme court overturned that requirement just six years later, in *State v. O'Connell*, 275 N.W.2d 197, 205 (Iowa 1979) ("We now conclude [the rule in *Reeves*] is no longer a requirement in this jurisdiction. This court has routinely observed that circumstantial evidence may be equal or superior to direct evidence."). It is so axiomatic that direct and circumstantial evidence are equally probative that parties need not cite to the proposition in their briefs to this court. Iowa R. App. P. 6.904(3)(p).

he had possession of the material found in the black pouch and insufficient evidence the plant matter was marijuana rather than hemp.

"Unlawful possession of a controlled substance requires proof that the defendant: (1) exercised dominion and control over the contraband, (2) had knowledge of its presence, and (3) had knowledge that the material was a controlled substance." *State v. Bash*, 670 N.W.2d 135, 137 (Iowa 2003). Neades challenges the first element—possession and control over the contraband. Possession can be actual or constructive. *Id.* at 138. Actual possession exists when the contraband "is found on the defendant's person." *Id.* In contrast, "constructive possession occurs when the defendant has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it." *Id.*

The district court found that there was no actual possession because the pouch was not on Neades's person. Neades alleges the court erred in finding he had constructive possession of the pouch. We look to several factors when determining whether a defendant has constructive possession, including:

> (1) incriminating statements made by the person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance. Further, when the premises is a vehicle, the court may also consider these additional factors: (1) was the contraband in plain view; (2) was it with the person's personal effects; (3) was it found on the same side of the car or immediately next to the person; (4) was the person the owner of the vehicle; and (5) was there suspicious activity by the person.

*State v. Dewitt*, 811 N.W.2d 460, 475 (Iowa 2012) (quoting *State v. Maxwell*, 743 N.W.2d 185, 194 (Iowa 2008)).

There is sufficient evidence in the record Neades had constructive possession of the marijuana. First, the baggies were found in the pouch that Neades admitted belonged to him. The bag also contained Neades's personal items, including his state-issued identification card and his social security card. He denied having any identification to the deputies, even though he had multiple forms of identification in his pouch within arm's reach. He was the driver of the vehicle, and showed a familiarity of the car by explaining what was in the trunk even though he claimed he had not been in the vehicle for a week.

Neades's conduct also reveals he knew about the marijuana. For instance, he claimed the pouch contained his cigarettes and dash-cam footage from the deputies' cruiser show him emerging from the vehicle with a fresh cigarette. A deputy also testified smoking a cigarette is a common way defendants mask a smell or calm their nerves. Neades consistently tried to distance himself from the vehicle and its occupants. He claimed the car was his girlfriend's but did not know her date of birth.[4] He also asserted his girlfriend usually carried his pouch, yet he had just accessed it for a cigarette. He claimed to have just met Travis, but spoke casually with him for an extended period once they both exited the car. Neades told the deputies that he did not know Mari's sister, Shari, but Mari told them that he had known Shari for years. Neades admitted to being a marijuana user.

---

[4] The car was not registered to his girlfriend.

Neades also attacks the constructive-possession finding based on the roughly three-and-a-half minutes Travis was alone in the car when Mari partially obstructed the view of the dash-cam, as well as a brief period when both deputies were talking to Neades and not watching Travis or Mari. Neades testified that he left his black pouch in the driver's side door when he exited the vehicle. Neades's assertions are not enough to undermine the district court's conclusion. First, it strains credibility to suggest Travis knew the dash cam was blocked and neither deputy was watching him, providing the opportunity to hide the drugs. Similarly, the dash-cam does not support the idea that Mari or Travis reached to the driver's side door, grabbed the pouch, and planted the drugs when the deputies were speaking with Neades. Taken together, Neades's inconsistencies and the actual location of the drugs near his personal items and himself provide sufficient evidence to support the court's finding that he had constructive possession of the drugs. There is substantial evidence that the pouch and drugs belonged to Neades.

There is also sufficient evidence the contents of the baggies were marijuana. Neades argues there is insufficient evidence because the State never tested the drug in a way that conclusively shows it is an illegal narcotic. However, Neades concedes, "the State is not required to test the purported drug." *See State v. Brubaker*, 805 N.W.2d 164, 172 (Iowa 2011) *as amended on denial of reh'g* (Nov. 3, 2011). The State can instead rely on "circumstantial evidence to find that the substance is an illegal drug." *Id.*

The *Brubaker* court found that testimony of a criminalist that pills seized from a defendant's car were "consistent in appearance" with a particular

prescription drug was insufficient to support a finding that the pills were a prescription drug. Id. Iowa courts have recognized that, for a person to be convicted of a drug offense, the State is not required to test the purported drug. *Id.* The *Brubaker* court's analysis is worth quoting at length:

> The finder of fact is free to use circumstantial evidence to find that the substance is an illegal drug. *Id.* The reason for this rule is that circumstantial evidence is not inferior to direct evidence. In a given case, circumstantial evidence may be more persuasive than direct evidence. Circumstantial evidence is equally probative as direct evidence for the State to use to prove a defendant guilty beyond a reasonable doubt.
>
> The question is whether a rational trier of fact could have found that all essential elements of the crime were established beyond a reasonable doubt based on the evidence produced at trial. "Inferences drawn from the evidence must raise a fair inference of guilt on each essential element . . . ." An inference must do more than "create speculation, suspicion, or conjecture." Evidence that allows two or more inferences to be drawn, without more, is insufficient to support guilt.
>
> The State chose not to have the pills tested or call a qualified expert witness to testify that the pills were, in fact, Clonazepam. Thus, there is no direct evidence that the pills found in Brubaker's vehicle were a prescription drug. Instead, the State relied on the testimony of a criminalist who compared the pills to a picture of Clonazepam. After making the comparison, the criminalist was only able to say the pill was consistent in appearance with a pharmaceutical preparation containing Clonazepam.

*Id.* at 172-73 (citations omitted).

The supreme court additionally stated:

> [C]ircumstantial proof may include evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence.

Other courts have listed additional circumstantial evidence to aid the [S]tate in its burden to prove a substance is an illegal drug. These factors include whether ingestion of the substance caused a change in the defendant's behavior; whether the defendant referred to the substance as "very good stuff," and whether the known odor of the substance identified it as an illegal drug. These factors are not exclusive, and the [S]tate is not required to prove all of these circumstances were present to sustain a conviction. Rather, we look at these circumstances in light of the evidence produced at trial to determine whether the [S]tate produced sufficient evidence to support the proposition that the substance was an illegal substance when expert testimony did not identify the substance as illegal.

*Id.* at 173 (citations omitted).

In *Brubaker*, the testimony presented at trial only indicated that a criminalist, whose training or prior experience was unknown, compared the pills to reference materials and, after doing so, could only state that the pills were "consistent in appearance with a pharmaceutical preparation containing [C]lonazepam." *Id.* The criminalist did not specify that the pills were Clonazepam and did not explain how she reached her conclusion that the pills were consistent in appearance with a pharmaceutical preparation containing Clonazepam. Under that record, the supreme court determined the criminalist's testimony was not sufficient to allow the jury to make a finding the pills were, in fact, Clonazepam without speculating. *Id.* at 172–74.

The instant record is distinguishable from the limited testimony offered in *Brubaker*. Here, the Department of Criminal Investigation's criminalist testified the substance was consistent with marijuana based on both macro and microscopic examinations. The training of the criminalist is contained in this record. The lab

also performed two other tests that indicated the substance was cannabis.[5] While the last two tests did not differentiate between marijuana and hemp, nothing in the record supports Neades's contention that the baggies contained hemp. Deputy Bach testified the substance was consistent with marijuana based on his prior experiences and the substance's smell. Similarly, Detective Larson testified that the substance's appearance was consistent with marijuana. Larson explained that they had never seen hemp packaged into small bags in the way the marijuana was here. When presented with the baggies, Neades—who had admitted to using marijuana—testified that they appeared to contain marijuana. The evidence supports the district court's finding that the baggies contained marijuana. That finding is not based on speculation.

There is substantial evidence to support the district court's findings that Neades had possession of the baggies and that the baggies contained marijuana. Sufficient evidence to support his conviction for possession of a controlled substance with intent to distribute is present in the record.

**AFFIRMED.**

---

[5] One of the lab reports involved comparing the evidentiary sample to a known positive.