# IN THE COURT OF APPEALS OF IOWA

No. 23-0843
Filed September 4, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**SHATANI D. BUCK JR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Poweshiek County, Rose Anne Mefford (suppression hearing) and Shawn R. Showers (trial and sentencing), Judges.

        A defendant appeals from his conviction for possession of marijuana, challenging the district court's denial of his suppression motion, a jury instruction, and whether sufficient evidence supported his conviction.  **AFFIRMED.**

        Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

        Considered by Tabor, C.J., Chicchelly, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**VOGEL, Senior Judge.**

Shatani Buck, Jr. was convicted of possession of marijuana after he produced a bag of marijuana while being transported to jail on an unrelated charge. Buck now alleges three claims on appeal. He contends: (1) the evidence of his possession of marijuana should have been suppressed because of an interrogation without a *Miranda* warning; (2) there was insufficient evidence the green leafy substance was "marijuana, a controlled substance"; and (3) the district court wrongly instructed the jury on controlled marijuana versus hemp.

Because Buck was not being interrogated when he admitted to possessing marijuana, the district court correctly denied his motion to suppress. There was sufficient evidence for the jury to find the substance Buck had on his person was marijuana. Finally, the jury instruction properly stated the applicable law and the court was not required to include Buck's proposed wording. Accordingly, we affirm.

I.      **Factual Background and Proceedings.**

Shatani Buck was driving with a passenger in Poweshiek County in February 2021. He was stopped by an Iowa State Patrol trooper for speeding and a registration sticker violation. The trooper approached the vehicle and noted a "fairly strong, noticeable" smell of "raw marijuana" emanating from the car. The trooper brought Buck back to his squad car to inspect Buck's vehicle. Buck told the trooper he smokes marijuana but none was in the car. The trooper did not find any marijuana on Buck or on the passenger. He did discover a prescription bottle in Buck's vehicle with "leftover crumbs of marijuana" at the bottom. The trooper showed Buck the pill bottle and dumped the remaining marijuana into the roadside ditch.

At that point, the trooper's "marijuana investigation was over." However, the trooper learned Buck had violated a no-contact order—with the protected person in the vehicle with Buck. The trooper then arrested Buck on that ground, took Buck into custody, and transported him to the Poweshiek County Jail. On the way to the jail, the trooper said to Buck:

> I just wanna tell you before we get to the jail, if there's anything on you that I missed, if you're hiding anything and I missed it, if you take it into the jail, it's a felony. Okay? So, if you got something, it'd be best you let me know, but it's up to you.

Buck responded that "if I had something, you'd be charging me either way." The trooper replied, "correct, but it's a felony if you bring it into the jail, so something to think about." Buck asked about the trooper's discretion to arrest him further. The officer explained his prior decision to use discretion in not arresting Buck for the marijuana crumbs since it was "not a huge deal" to him. Buck then questioned if it was "too late" for the trooper to "cut [him] a break." The trooper asked, "on what?" and noted he could not offer discretion for the unrelated, no-contact-violation charge—the reason for Buck being arrested. The trooper then asked Buck "are you thinking there's something else, or what, what is it?" Buck answered, "I've got some weed."

Buck produced the marijuana once they arrived at, but before entering the jail. He produced a clear plastic bag of marijuana from the front of his pants. Buck was then charged with possession of a controlled substance, along with the initial no-contact-violation charge. *See* Iowa Code § 124.401(5) (2021).

Before trial, Buck moved to suppress his statements about the "weed" made in the patrol car and the resulting physical evidence. He asserted his rights against

self-incrimination under the United States and Iowa Constitutions were violated because he was not given a *Miranda* warning. He also alleged that he was subject to an unreasonable search and seizure because of his unconstitutional admissions revealing the bag of marijuana.

The district court denied his motion, finding that although Buck was in custody in the patrol car, he was not interrogated by the trooper. The court reasoned that the trooper "made statements" and Buck "asked questions," and thus Buck's "voluntary statements" were "not subject to the protections of" *Miranda*. Likewise, because Buck's statement admitting he had marijuana in his pants was voluntary, there was no basis to suppress his verbal statements or the bag of marijuana.

The matter proceeded to trial. During the trial, Buck's counsel focused on whether the State proved his marijuana contained a high enough THC concentration to amount to an illegal controlled substance. *See* Iowa Code § 124.204(4)(m), (7)(a)–(b). The trooper testified to observing the bag Buck procured and that it smelled like marijuana. While he stated he was not directly able to distinguish between hemp and marijuana based on sight or smell, he stated, "they're usually packaged different," and that "if it's hemp, something you bought legally, it's in, like, a normal product package." But when there is uncertainty, the material is sent to the state lab for inspection. The trooper admitted Buck did not say whether the marijuana truly had a THC concentration above the limit, nor did he say whether it was marijuana or hemp, but only that it was "weed."

The State entered into evidence a laboratory report conducted by the Division of Criminal Investigation of the "plant material" from Buck. The report identified the substance as 6.14 grams of "marijuana" with a 99.73% confidence level. Buck contends this report highlights the State's failure to prove the substance he possessed was "marijuana, a controlled substance," instead of hemp. *See id.* § 124.204(7)(a)–(b) (providing that hemp with THC levels under "three-tenths of one percent on a dry weight basis" is excluded as a Schedule I controlled substance).

Buck also sought to include specific language outlining this distinction in the jury instructions. The jury was instructed on marijuana as follows:

> INSTRUCTION #8
> Definition of Marijuana: "Marijuana" means all parts of the plants of the genus Cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin, including tetrahydrocannabinols.
> It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant Cannabis, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake or the sterilized seed of the plant which is incapable of germination.
> Marijuana, a controlled substance, does not include hemp. Hemp means the plant Cannabis and any part of that plant, whether growing or not, with a THC concentration of not more than 0.3% on a dry weight basis.

Buck sought to add one final sentence—"In order to be classified as Marijuana, a controlled substance, the plant Cannabis must have a THC concentration of higher than 0.3% on a dry weight basis."

The State objected to the proposed instruction, arguing it deviated from the model jury instruction, it would confuse the jury, and it would make the jury think

that without direct evidence of THC concentration, there can be no guilt. The court found the instruction to be "a proper statement of the current law" and declined to add Buck's proposed additional sentence, as that sentence "overly emphasizes the THC concentration," "would be prejudicial to the State," and "would be confusing with the jury having to do their job and then trying to read a lab result."

The jury convicted Buck of possession of marijuana. Buck appeals, requesting we remand his case for a new trial with the challenged evidence excluded or for entry of judgment of acquittal.

## II.     Discussion.

### A.     Motion to Suppress.

We first consider Buck's challenge to the denial of his motion to suppress. The challenge of the district court's denial of a motion to suppress based on the deprivation of a state or federal constitutional right is reviewed de novo. *See State v. Harbach*, 3 N.W.3d 209, 217 (Iowa 2024). Each case is "evaluated in light of its unique circumstances." *State v. Wittenberg*, 997 N.W.2d 665, 668 (Iowa 2023) (quoting *State v. Fogg*, 936 N.W.2d 664, 667 (Iowa 2019)). "We examine the whole record and make an independent evaluation of the totality of the circumstances." *Id.* (quoting *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018)).

Buck argues his statements en route to the jail and the physical evidence retrieved from his person resulted from custodial interrogation without proper *Miranda* warnings. His challenge is based on his constitutional right against self-incrimination under the Fifth and Fourteenth Amendments of the United States Constitution, as well as article I, section 9 of the Iowa Constitution. *See* U.S. Const.

amends V, XIV; Iowa Const. art. 1, § 9; *see also Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966); *State v. Iowa Dist. Ct.*, 801 N.W.2d 513, 518 n. 2 (Iowa 2011).

"We first determine whether *Miranda* warnings were required and, if so, whether they were properly given. Second, we ascertain whether the statement is voluntary and satisfies due process." *State v. Countryman*, 572 N.W.2d 553, 557 (Iowa 1997) (citation omitted). A *Miranda* warning must be given to those "who are both in custody and subject to interrogation." *State v. Park*, 985 N.W.2d 154, 168 (Iowa 2023). The State does not contest that Buck was in custody when he was handcuffed and transported to jail in the squad car. We therefore turn to whether an interrogation took place in the interaction between Buck and the trooper.

Interrogation in the *Miranda* context "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). What is "reasonably likely to elicit an incriminating response?" That standard primarily looks at:

> the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Id.* at 301–02 (footnote omitted).

Importantly, routine statements that are "not the product of 'compulsion above and beyond that inherent in custody itself'" are not subject to suppression. *State v. Sallis*, 574 N.W.2d 15, 18 (Iowa 1998) (quoting *Innis*, 446 U.S. at 300). Not all "[s]tatements made after a person is taken into custody" are "automatically considered the product of interrogation." *State v. Turner*, 630 N.W.2d 601, 608 (Iowa 2001). This includes "statements that are volunteered, spontaneous and freely made by an arrested person." *Id.*

After reviewing the testimony as well as the in-vehicle video recording, the district court determined the trooper's statement—that bringing contraband items into the jail constituted a felony—was made as an advisory to Buck. The purpose was not to gather further information from Buck. *Cf. State v. Schlitter*, 881 N.W.2d 380, 396 (Iowa 2016) (finding interrogation when the police's purpose "was to get [the defendant] to confess to being the perpetrator"), *abrogated on other grounds by State v. Crawford*, 972 N.W.2d 189 (Iowa 2022). Rather, the trooper informed Buck of the possible consequences of bringing marijuana into the jail. After the trooper informed Buck of this possibility, roughly two minutes passed before Buck responded. The trooper did not seek an answer or production of evidence with his statement when Buck at first remained silent. The Fifth Amendment's guarantees do not "protect" Buck "from his own compulsions or internally[ ]applied pressures which are not the product of police action." *United States v. Guerro*, 983 F.2d 1001, 1004 (10th Cir. 1993). We agree with the district court that the trooper's statement served as a precautionary warning before entering the jail. It was not an interrogation.

Even if we were to determine the trooper's statement was a custodial interrogation, the inevitable discovery rule would sustain the district court's ruling. Non-testimonial evidence that would ultimately be discovered through lawful means is admissible without offending the constitution. *State v. Seager*, 571 N.W.2d 204, 211 (Iowa 1997). Additionally, the protection against self-incrimination "is not implicated by the admission into evidence of the physical fruit of a voluntary statement." *United States v. Patane*, 542 U.S. 630, 636 (2004); *see also State v. Decker*, 744 N.W.2d 346, 354–55 (Iowa 2008); *State v. Smith*, No. 13-0993, 2014 WL 3511811, at *4 (Iowa Ct. App. July 16, 2014) ("Even if a *Miranda* violation occurred, the suppression of physical evidence obtained as a result of an *unMirandized* statement is not a recognized *Miranda* remedy."). The bag of marijuana would likely have been discovered while booking Buck at the jail. The arresting trooper noted the smell of marijuana from Buck, which would have prompted further investigation and search by the booking officers. The inevitable discovery rule would have allowed the marijuana to be admitted into evidence. We affirm the district court's ruling denying Buck's motion to suppress.

**B. Sufficiency of the Evidence.**

Next, we review Buck's claim that the State did not establish the marijuana in Buck's possession was a controlled substance. We review sufficiency of the evidence challenges for correction of errors at law. *State v. Schwartz*, 7 N.W.3d 756, 764 (Iowa 2024). We "will not disturb the district court's finding if it is supported by substantial evidence." *Id.* "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt," and it must raise more than mere suspicion or speculation. *Id.*

We view the evidence "in the light most favorable to the State, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (cleaned up).

Buck argues that the State failed to show the marijuana in the bag qualified as "marijuana, a controlled substance." He contends that while marijuana is broadly defined as "all parts of the plants of the genus Cannabis," only marijuana that has a THC concentration over "three-tenths of one percent on a dry weight basis" is an illegal controlled substance. *See* Iowa Code §§ 124.101(20), 124.204(7). The DCI's Drug Chemistry Report found the bag contained 6.14 grams of "marijuana" "with at least a 99.73% level of confidence." But it did not specifically analyze the THC content of the marijuana. Nor was the arresting trooper able to make a confident identification that the marijuana contained more than 0.3% THC. The trooper testified marijuana and hemp smell similar to each other, and he was unsure if the two products were visually different. However, he was confident they would be packaged differently—distinguishing a legally possessed product from an illegal one. Because the State did not test the level of THC content of green leafy substance he possessed, Buck claims there is not sufficient evidence it was marijuana, a controlled substance.

However, the State need not test the alleged drug for an individual to be convicted of a drug offense. *State v. Brubaker*, 805 N.W.2d 164, 172 (Iowa 2011). "The finder of fact is free to use circumstantial evidence to find that the substance is an illegal drug," and such circumstantial evidence "is not inferior to direct evidence" to establish guilt beyond a reasonable doubt. *Id.*; *see also* Iowa R. App. P. 6.904(3)(o).

Here the jury had sufficient evidence to find that the marijuana Buck possessed was a controlled substance. When the trooper, who was trained in recognizing the smell of marijuana, initially approached Buck's vehicle, he noticed the fairly strong smell of marijuana emanating from within the vehicle. Later, when examining the contents of the bag, he formed the opinion the contents of the bag smelled like and was packaged like marijuana. *See Brubaker*, 805 N.W.2d at 173 (including "the known odor of the substance identified it as an illegal drug" as possible circumstantial evidence). The jury was also informed Buck was secretive about the bag, which he had concealed on his person. When advised that bringing contraband items into the jail would result in a felony charge, Buck alerted the trooper to the marijuana. He told the trooper it was "weed" in the bag and asked the trooper for discretion in charging him for the "weed." If Buck believed the marijuana to be legal hemp and not illegal marijuana, then the jury could wonder why he felt the need to hide its possession. The circumstantial evidence was sufficient for the jury to convict Buck of possession of marijuana, a controlled substance.

### C. Instructing the Jury on Marijuana.

Buck's final point on appeal argues the district court erred in denying his requested jury instruction language defining "marijuana, a controlled substance." "We review challenges to jury instructions for correction of errors at law." *State v. Johnson*, 7 N.W.3d 504, 510 (Iowa 2024). A jury instruction error requires reversal only if the complaining party is prejudiced. *Id.* at 508. "[W]hen jury instructions mislead the jury or materially misstate the law," prejudice has occurred and we must reverse. *State v. Benson*, 919 N.W.2d 237, 241–42 (Iowa 2018). "The

court's instructions must convey the applicable law in such a way that the jury has a clear understanding of the issues it must decide." *State v. Davis*, 951 N.W.2d 8, 17 (Iowa 2020) (quoting *Thompson v. City of Des Moines*, 564 N.W.2d 839, 846 (Iowa 1997)).

Here, the jury was instructed that the State must prove Buck "knowingly or intentionally possessed marijuana, a controlled substance, as defined in Instruction No. 8" and that Buck "knew that the substance he possessed was marijuana, a controlled substance." The instruction then clarifies that "[m]arijuana, a controlled substance, does not include hemp. Hemp means the plant Cannabis and any part of that plant, whether growing or not, with a THC concentration of not more than 0.3% on a dry weight basis."

This instruction properly told the jury the applicable law of what does and does not qualify as marijuana, a controlled substance. *See Vroegh v. Iowa Dep't of Corr.*, 972 N.W.2d 686, 695 (Iowa 2022). It explains that marijuana does not include hemp below 0.3% of THC on a dry weight basis, mirroring the applicable law. *See* Iowa Code § 124.204(7). Adding the language Buck proposed would be redundant and, as the district court said, "confusing" to the jury. We agree there is no error in the instruction given by the court.

We affirm the district court's denial of Buck's motion to suppress, find sufficient evidence to sustain the verdict, and find no error in the challenged jury instruction.

**AFFIRMED.**